## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRISTIAN VALLEJO, individually and on behalf of all similarly situated current and former employees,** | § § § § | |
| **Plaintiff,** | § § | |
| | § | **C.A. NO.:  4:12-cv-00555** |
| **v.** | § § | |
| **GARDA CL SOUTHWEST. INC.,** | § § | |
| **Defendant.** | § § | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION, AND BRIEF IN SUPPORT

**Robert F. Friedman**
**Attorney in Charge**
**Texas Bar No. 24007207**
**Southern District No.  382**
**Edward F. Berbarie**
**Texas Bar No. 24045483**
**Southern Dist. No. 941117**
**Russell R. Zimmerer**
**Texas Bar No. 24063988**
**Southern Dist. No. 1132644**

**LITTLER MENDELSON, P.C**.
**2001 Ross Avenue, Suite 1500**
**Dallas, Texas 75201-2931**
**Tel:  (214) 880-8100**
**Fax:  (214) 880-0181**
rfriedman@littler.com
eberbarie@littler.com
rzimmerer@littler.com

**ATTORNEYS FOR DEFENDANT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................... 1

II.     STATEMENT OF NATURE AND STAGE OF PROCEEDING .................................. 2

III.    STATEMENT OF ISSUES AND STANDARD OF REVIEW .................................... 3

IV.     FACTUAL BACKGROUND: ................................................................................... 4

V.      ARGUMENTS AND AUTHORITIES ........................................................................ 6

      A.      Plaintiff's Claim Must Be Arbitrated ..................................................... 6

            1.      Plaintiff's Claim Must Be Arbitrated Under The FAA .......................... 6

                  a.      The Agreement is valid and enforceable and covers the
                        subject matter of this suit ............................................................... 7

                        (1)      The Agreement is Valid and Enforceable ......................... 7

                        (2)      The Subject Matter of the Lawsuit is Covered by
                              the Agreement ................................................................... 9

                  b.      Any doubts should be resolved in favor of arbitration ............... 10

                  c.      Federal law mandates that Plaintiff be required to arbitrate
                      his claim ................................................................................... 10

            2.      Plaintiff's Claim Must Be Arbitrated Under The NLRA ....................... 11

      B.      The Arbitrator – Not this Court – Should Determine Whether This Matter
          Is Arbitrable In The First Place ........................................................... 12

      C.      The Arbitration Must Proceed As an Individual Action, Rather Than A
          Class or Collective Action ................................................................... 13

VI.     CONCLUSION AND REQUEST FOR RELIEF .............................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*14 Penn Plaza LLC v. Pyett,*
556 U.S. 247 (2009)....................................................................................1, 4, 11, 12

*Advantage Physical Therapy, Inc. v. Cruse,*
165 S.W.3d 21 (Tex. App.—Houston [14th Dist.] 2005, no pet.)...........................8

*Alford v. Dean Witter Reynolds, Inc.,*
975 F.2d 1161 (5th Cir. 1992) ................................................................................10

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 1740 (U.S. 2011).........................................................................2, 13, 14

*Baer v. The Terminix Co. Ltd. P'ship.,*
975 F.Supp. 1272 (D.Kan. 1997) ..............................................................................7

*Burton v. Citigroup,*
2004 U.S. Dist. LEXIS 10627 (N.D. Tex June 9, 2004) ..........................................9

*Carter v. Countrywide Credit Indus.,*
362 F.3d 294 (5th Cir. 2004) ..................................................................................12

*Circuit City Stores v. Adams,*
532 U.S. 105 (2001).................................................................................................6

*Citizens Bank v. Alafabco, Inc.,*
539 U.S. 52 (2003)...................................................................................................7

*Coleman v. Jenny Craig, Inc.,*
2012 U.S. Dist. LEXIS 70789 (S.D. Cal. May 15, 2012)......................................15

*Dean Witter Reynolds Inc. v. Byrd,*
470 U.S. 213 (U.S. 1985).....................................................................................3, 10

*Fedmet Corp. v. M/V Buyalyk,*
194 F.3d 674 (5th Cir. 1999) ..................................................................................10

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995)......................................................................................7, 12, 13

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991)...................................................................................................6

*Goodale v. George S. May Int'l Co.,*
2011 U.S. Dist. LEXIS 37111 (E.D. Ill. April 5, 2011) ........................................16

*Grabowski v. C.H. Robinson Co.,*
  2011 U.S. Dist. Lexis 105680 (S.D. Cal. Sept. 19, 2011) .....................................16

*Gutierrez v. Acad. Corp.,*
  967 F. Supp. 945 (S.D. Tex. 1997) .....................................................................10

*Hill v. Garda CL Nw., Inc.,*
  281 P.3d 334 (Wash. Ct. App. 2012)....................................................11, 14, 15

*Howsam v. Dean Witter Reynolds,*
  537 U.S. 79 (2002)...............................................................................................1, 3, 7

*In re Border Steel, Inc.,*
  229 S.W.3d 825 (Tex. App. 2007—El Paso, orig. proceeding) ............................8

*In re Citgo Petroleum Corp.,*
  248 S.W.3d 769 (Tex. App. – Beaumont 2008, original proceeding) ....................8

*In re Dallas Peterbilt, Ltd., L.L.P.,* 196 S.W.3d 161, 162-63 (Tex. 2006) .................8

*In re Dillard Dep't Stores,*
  198 S.W.3d 778 (Tex. 2006).................................................................................9

*In re Halliburton Co.,*
  80 S.W.3d 566 (Tex. 2002)...................................................................................8

*In re J.D. Edwards World Solutions Co.,*
  87 S.W.3d 546 (Tex. 2002)...................................................................................10

*In re McKinney,*
  167 S.W.3d 833 (Tex. 2005).................................................................................8

*Johnson v. Coca-Cola Refreshments USA, Inc.,*
  2012 U.S. Dist. LEXIS 26994 (E.D. Tex. Feb. 3, 2012) ......................................9

*Jones v. Fujitsu Network Comm., Inc.,*
  81 F.Supp.2d 688 (N.D. Tex. 1999) ....................................................................9

*Karp v. Cigna Healthcare, Inc.,*
  2012 U.S. Dist. LEXIS 54215 (D. Mass. Apr. 18, 2012) .....................................15

*Kinecta Alt. Fin. Solutions v. Superior Court,*
  2012 Cal. App. LEXIS 487 (Cal. App. 2d Dist., April 25, 2012)...........................15

*LaVoice v. UBS Fin. Serv., Inc.,*
  2012 U.S. Dist. LEXIS 5277 (S.D.N.Y. Jan. 13, 2012)........................................15

*Lim v. Offshore Specialty Fabricators, Inc.,*
  404 F.3d 898 (5th Cir.), cert denied, 531 U.S. 1013 (2005)................................12

*May v. Higbee Co.*,
   372 F.3d 757 (5th Cir. 2004) ......................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)..........................................................................3, 6, 10

*Palmer v. Convergys Corp.*,
   2012 U.S. Dist. LEXIS 16200 (M.D. Ga. Feb. 9, 2012).........................15

*Reed v. Fla. Metro. Univ.*,
   2012 U.S. App. LEXIS 10048 (5th Cir. May 18, 2012) ................2, 13, 14

*Rent-A-Center West, Inc. v. Jackson*,
   130 S.Ct. 2772 (2010)..........................................................2, 4, 12, 13

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
   130 S. Ct. 1758 (U.S. 2010)..................................................2, 4, 13, 14

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)..................................................................................10

STATUTES

Federal Arbitration Act, 9 U.S.C., § 1, *et seq.* .................................... passim

National Labor Relations Act (the "NLRA"), 29 U.S.C. § 151, *et seq.* .........................................6

OTHER AUTHORITIES

LR7.1 .........................................................................................................17

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTIAN VALLEJO, individually and on behalf of all similarly situated current and former employees, | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | C.A. NO.:  4:12-cv-00555 |
| v. | § | |
| | § | |
| GARDA CL SOUTHWEST, INC. | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS AND COMPEL ARBITRATION, AND BRIEF IN SUPPORT**

Defendant, Garda CL Southwest, Inc. ("Garda" or the "Company"), moves the Court to dismiss or, in the alternative, stay this proceeding and compel Plaintiff Christian Vallejo ("Vallejo" or "Plaintiff") to arbitrate his claim on an individualized basis, as provided for in the agreement that he signed.  In support of its motion, Garda respectfully shows the Court as follows:

**I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Plaintiff's FLSA claim against his former employer, Garda, must be decided in arbitration because this claim is expressly covered by the grievance and arbitration provision of a collective bargaining agreement that was negotiated and entered into by his exclusive bargaining representative (his Union) and signed by Plaintiff.  As a result, under both the Federal Arbitration Act and the National Labor Relations Act, this Court is required to enforce the terms of the Agreement, which requires Plaintiff to arbitrate any claims regarding his rate of pay or entitlement to compensation under federal law, or related to his employment relationship with Garda.  *See Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002); *14 Penn Plaza LLC v. Pyett*,

556 U.S. 247 (2009). The Agreement also assigns to arbitration all questions regarding its interpretation and application, and this Court therefore must also yield to arbitration in relation to any question that would require interpreting or applying the Agreement in the first place. *See Rent-A-Center West, Inc. v. Jackson*, 130 S.Ct. 2772 (2010).

It is also well-settled under both Supreme Court and Fifth Circuit precedent that a party cannot be required to participate in class-wide arbitration, unless the party has expressly agreed to do so. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751 (U.S. 2011); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (U.S. 2010); *Reed v. Fla. Metro. Univ.*, 2012 U.S. App. LEXIS 10048 (5th Cir. May 18, 2012). Because Garda has never agreed to participate in any type of class or collective action arbitration, this Court cannot require Garda to defend against these type of claims in arbitration.

As a result, this Court should dismiss Plaintiff's claims and order him to arbitrate his claim on an individualized basis as provided for in the Agreement that he signed.

## II.    STATEMENT OF NATURE AND STAGE OF PROCEEDING

This lawsuit was filed by Plaintiff on or about February 23, 2012, and it was served on or about May 22, 2012. Plaintiff, a former employee of Garda, brings this lawsuit as a collective action and alleges violations of the overtime pay provisions of the Fair Labor Standards Act (the "FLSA") §§ 206-07. On July 16, 2012, during the initial conference, counsel for Defendant alerted the Court and Plaintiff's counsel to the existence of the collective bargaining agreement and the requirement that Plaintiff arbitrate his claims. Defendant subsequently filed its First Amended Answer, which expressly asserted arbitration as a defense. Defendant's counsel asked Plaintiff's counsel to dismiss the case based on Plaintiff's agreement to arbitrate his claims, but Plaintiff refused.

2

The parties have exchanged initial disclosures, and Plaintiff has served written discovery upon Garda.[1]  No other discovery has occurred to date, and there are no other motions currently pending for determination by this Court.

## III.   STATEMENT OF ISSUES AND STANDARD OF REVIEW

The issues to be determined by this Court are: (1) Whether Plaintiff's claims must be arbitrated; (2) Whether this Court or an arbitrator may decide in the first place any questions which require the interpretation or application of the parties' agreement to arbitrate; and (3) Whether Plaintiff's claims may proceed in arbitration as an individual or a collective action.

Under the FAA, in deciding whether to compel arbitration, the trial court is tasked with determining two "gateway" issues: (1) whether there was an agreement to arbitrate; and (2) whether the agreement covers the dispute.  *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002).  When an arbitration agreement is found to exist that is governed by the FAA, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration … [.]"  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (U.S. 1985).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Under the NLRA, a provision in a collective bargaining agreement that requires union members to arbitrate a federal claim against their employer is enforceable, and "the arbitration provision must be honored unless the [federal statute] itself removes this particular class of

---

[1] Defendant has not served discovery requests because this case belongs in arbitration.  Plaintiff has served discovery requests and recently sought a deposition date.  Defendant contends that discovery is not proper in this Court, and it will object to these requests and to the deposition.

3

grievances from the NLRA's broad sweep." *Pyett*, 556 U.S. at 257-58 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)).

Likewise, if parties have clearly and unmistakably assigned certain gateway issues to arbitration, such as issues that require the interpretation or application of the parties' agreement, a Court must yield to arbitration as to any questions that require the interpretation or application of the agreement. *See Rent-A-Center West, Inc.*, 130 S. Ct. at 2777-2778.

Lastly, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (U.S. 2010).

## IV.    FACTUAL BACKGROUND:

Garda is a full service cash logistics company that processes and handles cash and checks for financial institutions and retailers. *See* Declaration of Martha Rodriguez, attached hereto as Exhibit 1 (App. 1-3.) Garda operates facilities throughout the United States, each of which, on a daily basis, exchanges, delivers and routes currency and checks between banks and the ultimate end consumers – including several of the country's Federal Reserve Banks. (App. 2, ¶4.) Garda handles and processes monies that travel in interstate commerce. (*Id.*)

Plaintiff was employed by Garda as driver/messenger/guard at its facility located in Houston, Texas, until his employment was terminated on January 26, 2012. (App. 2, ¶5.) As a driver/messenger/guard, Plaintiff was a member of the Houston / North Houston Drivers Association (hereinafter the "Union") and subject to the terms and conditions of a collective bargaining agreement entered into between the Union and the Company (the "Agreement"). The Agreement is attached as Exhibit A to the Declaration of Martha Rodriguez. (App. 4-21.) The Agreement, which was entered into on October 21, 2011, states that the Union is the "exclusive

representative for purposes of collective bargaining for all driver/messenger/guards ... employed by the Company at its facility located in Houston/North Houston.  (App. 4.)

Not only was the Plaintiff a member of the bargaining unit covered by the Agreement (App. 2, ¶8), but he also signed the Agreement individually, stating that he: (1) read and understood the Agreement, (2) signed it "freely and voluntarily" and is not relying on any inducements or promises made by the Company, or anyone on its behalf, in entering into the Agreement, and (3) expressly "agree[d] to its terms and conditions."  (App. 2, ¶8.)

All employment-related disputes must be submitted to the grievance and arbitration provisions set forth within the Agreement, and it specifically covers any:

> **legitimate controversy, claim or dispute by an employee**, shop steward or the Union concerning **rates of pay, entitlement to compensation**, benefits, hours, or working conditions set forth herein …. **any claim under any federal, state or local law, statute or regulation** or under any common law theory whether residing in contract, tort or equity **or any other claim related to the employment relationship**.

(App. 9) (emphasis added).  The Agreement sets forth the procedures by which employees are to submit grievances to the Company and ultimately to an arbitrator for resolution, and the Agreement provides: **"The decision of the arbitrator shall be final and binding upon the grievant and all parties to this Agreement**."  (App. 10.)  (emphasis added).  The Agreement further provides that any dispute regarding the "interpretation or application of this Agreement" is likewise to be decided through arbitration. (App. 9.)

Despite his agreement to arbitrate all controversies, claims or disputes related to his employment with Garda, including disputes regarding rates of pay or entitlement to compensation or under any federal law, Plaintiff filed this lawsuit claiming that he is entitled to compensation (overtime pay) under the FLSA.  (Doc. No. 1.)

5

## V.   ARGUMENTS AND AUTHORITIES

### A.   PLAINTIFF'S CLAIM MUST BE ARBITRATED

Plaintiff's claim must be arbitrated under both the Federal Arbitration Act (the "FAA") 9 U.S.C. § 1, *et seq.*, and/or, in the alternative, under the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 151, *et seq.*  Under either statute, the result is the same – Plaintiff ***must*** arbitrate all claims relating to his employment with Garda.

### 1.   Plaintiff's Claims Must Be Arbitrated Under The FAA

The FAA was originally enacted to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Circuit City Stores v. Adams*, 532 U.S. 105, 122-23 (2001) (noting the significant benefits of arbitrating claims in the employment context.).  Section 2 of the FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C § 2.  In referring to this section of the FAA, the United States Supreme Court has said:

> "Section 2 is a <u>congressional declaration of a liberal federal policy favoring arbitration agreements</u>, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. . . . [T]he Courts of Appeals have . . . consistently concluded that <u>questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree.</u> The Arbitration Act establishes that, as a matter of federal law, <u>any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration</u> . . ."

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added).

6

The FAA applies to agreements "involving commerce." 9 U.S.C. § 2. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *see also Baer v. The Terminix Co. Ltd. P'ship.*, 975 F.Supp. 1272, 1278 (D.Kan. 1997) (finding that the interstate character of the defendant's business is enough to satisfy the interstate commerce element of the FAA). Given that Garda handles and processes currency and checks that travel across state lines for financial institutions and retailers, there can be no doubt that the Agreement affects commerce. (*See* App. 2, ¶4.) Moreover, Garda operates facilities throughout the United States, each of which, on a daily basis, exchanges, delivers and routes currency and checks between banks and the ultimate end consumers – including several of the country's Federal Reserve Banks. (*Id.*) The Agreement is therefore governed by the FAA.

### a.   The Agreement is valid and enforceable and covers the subject matter of this suit.

In deciding whether to compel arbitration, the trial court is tasked with determining two "gateway" issues: (1) whether there was an agreement to arbitrate; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002). Here, it is simply undeniable that a valid and enforceable agreement to arbitrate exists that expressly covers Plaintiff's claim.

### (1)   The Agreement is Valid and Enforceable.

To determine whether a valid and enforceable agreement to arbitrate exists, the arbitration agreement must be examined under Texas state law regarding contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, Plaintiff accepted the Agreement and became bound to its terms in two separate and distinct ways.

7

First, Plaintiff signed the Agreement, expressly agreeing to its terms.  (App. 21.)  Indeed, a party's signature on the written contract is "strong evidence" that the party unconditionally assented to the terms.  *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 774 (Tex. App. – Beaumont 2008, original proceeding).  This alone is enough for Plaintiff to be subject to the arbitration provision of the Agreement.  *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms") (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)); *see also In re Border Steel, Inc.*, 229 S.W.3d 825, 834 (Tex. App. 2007—El Paso, orig. proceeding) ("one who signs a contract is legally held to have known what words were used in the contract, to have understood their meaning, and to have comprehended the legal effect of the contract.").[2]

Second, Plaintiff continued to work for Garda after receiving notice of the arbitration policy.  (App. 2, ¶5.)  By continuing to work for an employer after receiving notice of an arbitration policy, an employee accepts the agreement to arbitrate as a matter of law.   *In re Halliburton Co.,* 80 S.W.3d 566, 569 (Tex. 2002); *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004); *In re Dallas Peterbilt, Ltd.*, L.L.P., 196 S.W.3d 161, 162-63 (Tex. 2006).  Here, at the very least, Plaintiff's signature on the Agreement is evidence that he had notice of the arbitration policy, and by continuing his employment after receiving notice of the provision, he is bound by it.

---

[2] By virtue of its various mutual obligations, which provide ample consideration, and the signature of the parties, the Agreement of course also meets the other elements of a binding contract under Texas law.  *See Advantage Physical Therapy, Inc. v. Cruse,* 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (A binding contract exists when each of the following elements are established:  (1) offer; (2) acceptance; (3) meeting of the minds; (4) communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with the intent that it be mutual and binding; and (6) consideration.).

8

*See In re Dillard Dep't Stores*, 198 S.W.3d 778, 780-81 (Tex. 2006) (acceptance found when employee received, but did not sign, summary of arbitration policy and continued working past its effective date); *Johnson v. Coca-Cola Refreshments USA, Inc.*, 2012 U.S. Dist. LEXIS 26994 (E.D. Tex. Feb. 3, 2012) ("After notice, Plaintiff continued to work for Defendant, which indicates his acceptance of the change in his employment relationship and indicates his agreement to be bound by [the arbitration] Program."); *Burton v. Citigroup*, 2004 U.S. Dist. LEXIS 10627, *12 (N.D. Tex June 9, 2004) ("whether plaintiff signed any particular document is irrelevant . . . [plaintiff] manifested her acceptance as a matter of law by continuing to work for [defendant] after notification that the arbitration policy would be implemented."); *Jones v. Fujitsu Network Comm., Inc.*, 81 F.Supp.2d 688, 692 (N.D. Tex. 1999) (if employee continues working for employer with knowledge of arbitration policy, employee "accept[s] the arbitration policy as a matter of law").

(2)    <u>The Subject Matter of the Lawsuit is Covered by the Agreement.</u>

There can be no dispute that the Agreement covers Plaintiff's FLSA claim.   The Agreement expressly covers any "controversy, claim or dispute by an employee," concerning "rates of pay" or "entitlement to compensation," and the agreement expressly covers claims brought under any federal law or statute.  (App. 9.)  The Agreement also expressly covers any claim "related to the employment relationship."  (*Id*.)

Plaintiff's one and only claim in this lawsuit, for alleged violations of the overtime pay provisions of the FLSA, falls squarely within the scope of the Agreement.   As a result, the existence of a valid and enforceable arbitration agreement that covers the subject matter of this dispute therefore cannot be denied.

**b.      Any doubts should be resolved in favor of arbitration.**

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Indeed, district courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960).  Accordingly, to the extent any doubts exist as to whether Plaintiff's claim should be arbitrated under the Agreement, this Court must resolve any such doubts in favor of arbitration.

**c.      Federal law mandates that Plaintiff be required to arbitrate his claim.**

When an arbitration agreement is found to exist that is governed by the FAA, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration … [.]" *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (U.S. 1985).

The FAA also provides for a stay of proceedings in district courts when an issue in the proceedings is referable to arbitration.  9 U.S.C. § 3.  Where some, but not all, of a plaintiff's claims are arbitrable, a stay of judicial proceedings pending arbitration is appropriate.[3] However, where, as here, all of Plaintiff's claims are arbitrable, a stay is not necessary, and the legal action should be dismissed.  *See, e.g., Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

---

[3] Indeed, the FAA's stay provision is *mandatory,* and, if the issues in the case are within the scope of the arbitration agreement, the district court has no discretion to deny the stay.  *See Gutierrez v. Acad. Corp.*, 967 F. Supp. 945, 947 (S.D. Tex. 1997); *In re J.D. Edwards World Solutions Co*., 87 S.W.3d 546, 549 (Tex. 2002) ("If the arbitration agreement encompasses the claim at issue and there are no defenses to enforcement of the arbitration agreement itself, the trial court has no discretion but to compel arbitration and stay its own proceedings.").

Accordingly, this Court should therefore dismiss this lawsuit and order Plaintiff to arbitrate his claim against Garda under the FAA.

### 2. Plaintiff's Claim Must Be Arbitrated Under The NLRA

Not only does the FAA mandate that Plaintiff's claim be arbitrated, but the NLRA also prohibits Plaintiff from pursuing his claim anywhere other than through arbitration. Indeed, a Washington Court of Appeals just recently enforced a nearly identical arbitration provision for Garda. *See, infra., Hill v. Garda CL Nw., Inc.*, 281 P.3d 334 (Wash. Ct. App. 2012) (holding that the grievance and arbitration provision required individual arbitration of wage and hour claims brought by plaintiffs who were members of the bargaining unit and that the parties had unequivocally agreed to arbitrate their disputes). In *14 Penn Plaza LLC v. Pyett,* 556 U.S. 247 (2009), the United States Supreme Court held that a provision in a collective bargaining agreement that requires union members to arbitrate a federal claim against their employer is enforceable as a matter of law. In *Pyett*, the Supreme Court found that, "as the employees' exclusive bargaining representative, the Union 'enjoys broad authority ... in the negotiations and administration of the collective bargaining contract'" (*id.* at 255-56) and, "[j]udicial nullification of contractual concessions ... is contrary to what the Court has recognized as one of the fundamental policies of the National Labor Relations Act—freedom of contract." *Id.* at 256-57. The Court stated:

> As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer. Courts generally may not interfere in this bargained-for exchange.

*Pyett,* 556 U.S. at 257 (emphasis added). The Court then determined that, "the arbitration provision must be honored unless the [federal statute] itself removes this particular class of grievances from the NLRA's broad sweep." *Id.* at 257-58 (citing *Mitsubishi Motors Corp. v.*

11

*Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)).  Because the ADEA, the federal statute at issue in *Pyett*, does not preclude the arbitration of claims brought under the statute, the arbitration provision in *Pyett* was enforceable.  *Id*. at 274.

Here too, the Union and Garda have entered into a collective bargaining agreement and Plaintiff is a member of the bargaining unit covered by the Agreement.  Just like in *Pyett*, the Agreement expressly covers the claims brought under a federal statute against his employer. And, just like in *Pyett*, the FLSA does not preclude the arbitration of claims brought under the statute.  *See, e.g., Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 298 (5th Cir. 2004) (rejecting claim that inability to proceed collectively deprived plaintiffs of substantive rights available under FLSA); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 905-06 (5th Cir.) (holding that FLSA claims are arbitrable), cert denied, 531 U.S. 1013 (2005).

Accordingly, this Court must respect the Agreement under both the FAA and the NLRA, and Plaintiff is therefore required to arbitrate his FLSA claim against Garda.

**B.     THE ARBITRATOR – NOT THIS COURT – SHOULD DETERMINE WHETHER THIS MATTER IS ARBITRABLE IN THE FIRST PLACE**

The Agreement provides that "the interpretation or application of this Agreement" shall also be submitted to arbitration by the parties.  (App. 9.)  This means that the arbitrator, and not this Court, has the authority to resolve all questions concerning the interpretation and application of this Agreement, including whether the Agreement is enforceable and whether Plaintiff's claims are arbitrable.  *See Rent-A-Center West, Inc. v. Jackson,* 130 S.Ct. 2772 (2010).

While ordinarily, courts decide the gateway issue of arbitrability, in *First Options of Chicago, Inc. v. Kaplan*, the Supreme Court allows the parties to clearly and unmistakably provide otherwise.  514 U.S. 938, 943-44 (1985).  In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court reasoned:

> An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.

130 S. Ct. at 2777-2778.

Here, just like in *First Options* and *Rent-A-Center*, the parties have clearly and unmistakably assigned questions regarding the interpretation and application of the Agreement to an Arbitrator, and this Court must enforce this agreement like it would any other.  As a result, this Court may not resolve any questions that require the interpretation or application of the Agreement, including whether the Agreement is valid and enforceable in the first place and/or whether the Agreement applies to the claim asserted by Plaintiff.  These questions should instead be reserved for the Arbitrator.

**C.**  **THE ARBITRATION MUST PROCEED AS AN INDIVIDUAL ACTION, RATHER THAN A CLASS OR COLLECTIVE ACTION**

It is improper to force a party into a class proceeding to which it did not agree, because arbitration "is a matter of consent." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (U.S. 2010).  The United States Supreme Court has held that, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.,* 130 S. Ct. at 1775 (emphasis original).  Moreover, the United States Supreme Court has said, outright, that class arbitration is inconsistent with the FAA. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751 (U.S. 2011)

The Fifth Circuit Court of Appeals recently addressed this same issue, acknowledging that it must follow Supreme Court precedent that protects a party from being compelled to arbitrate class claims where the arbitration agreement is silent with respect to such claims because, after all, "arbitration 'is a matter of consent, not coercion.'" *See Reed v. Fla. Metro.*

13

*Univ.,* 2012 U.S. App. LEXIS 10048 (5th Cir. May 18, 2012) (quoting *Stolt-Nielsen*, "there can be only one possible outcome on the facts before us").

The Agreement here, just like the agreements at issue in *Stolt-Nielsen* and *Reed* referred to above, provides no contractual basis for Garda to have to defend a class or collective action in arbitration.   Rather, the language set forth in the Agreement contemplates claims by "an employee" or a "shop steward" – not a class.  (App. 9.)   Garda has never agreed or consented to participate in a class or collective-action arbitration and it cannot be required to do so.  Thus, the Agreement's express intent is inconsistent with class-wide arbitration.  *See Concepcion*, 131 S. Ct. at 1751 ("class arbitration sacrifices the principal advantage of arbitration—its informality— and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.").

Notably, the nearly identical arbitration provision found in this Agreement was found by a Washington State Court of Appeals, to be both enforceable and to bar class arbitration.  *See Hill v. Garda CL Nw., Inc.,* 281 P.3d 334 (Wash. Ct. App. 2012) ("A court may not require a party to submit to class arbitration unless the party agreed to do so. Because the arbitration agreements central to this appeal are silent on the issue, the trial court erred by ordering the parties to submit their dispute to class arbitration.").  The Court found:

> In this case, the grievance procedures in the collective bargaining agreements require arbitration of all grievances, which are defined as
>
> a legitimate controversy, claim or dispute by an employee, shop steward or the Union concerning rates of pay, entitlement to compensation, benefits, hours, or working conditions set forth herein, including without limitation, claims of harassment or discrimination or hostile work environment in any form, … or any claim of retaliation for making any such or similar claim, or the interpretation or application of this Agreement or any agreement made supplementary thereto, or any claim under any federal, state

14

> or local law, statute or regulation or under any common law theory
> whether residing in contract, tort or equity or any other claim
> related to the employment relationship.
>
> These arbitration agreements require employees to submit *any*
> claim under *any* federal, state, or local law to the grievance
> procedure outlined in the arbitration agreement. Clearly, **this
> provision encompasses the employees' wage claims** under
> chapter 49.52 RCW and chapter 49.12 RCW. **The requirement to
> arbitrate is clear and unmistakable. The employees waived
> their rights to pursue their claims through litigation.**

*Hill,* 281 P.3d at 339 (emphasis in original; bold emphasis added).

> Turning to the arbitration agreements in this case, **the contracts
> here, as in *Stolt-Nielsen*, are silent on the issue of class
> arbitration.** When it compelled the parties to arbitrate on a class-
> wide basis, the trial court did not ascertain the parties' intent from
> the language of the agreement. **Because no contractual basis
> existed allowing the court to order class arbitration, the trial
> court erred by doing so.**
>
> **As in *Stolt-Nielsen*, only one possible outcome exists under the
> facts of this case; therefore, we do not remand to either the
> court or the arbitrator for determination of whether the
> arbitration agreement allows class arbitration. As a matter of
> law, the trial court could not compel class arbitration. We
> remand for individual arbitration.**

*Id.* at 341 (emphasis added).

Various other courts have found that arbitration must proceed on an individualized basis

where there was no agreement by the parties to proceed as a class.  *See, e.g, Coleman v. Jenny*

*Craig, Inc.,* 2012 U.S. Dist. LEXIS 70789 (S.D. Cal. May 15, 2012) (compelling arbitration of

FLSA claims on individual basis only); *Kinecta Alt. Fin. Solutions v. Superior Court,* 2012 Cal.

App. LEXIS 487 (Cal. App. 2d Dist., April 25, 2012); *Karp v. Cigna Healthcare, Inc.,* 2012 U.S.

Dist. LEXIS 54215, 13-14 (D. Mass. Apr. 18, 2012); *Palmer v. Convergys Corp.,* 2012 U.S.

Dist. LEXIS 16200 (M.D. Ga. Feb. 9, 2012) (same); *LaVoice v. UBS Fin. Serv., Inc.,* 2012 U.S.

Dist. LEXIS 5277, *19-20 (S.D.N.Y. Jan. 13, 2012) (relying on *Stolt-Nielson* and *Concepcion* to

15

enforce and compel arbitration of plaintiffs' FLSA claims on an individualized basis); *Grabowski v. C.H. Robinson Co.,* 2011 U.S. Dist. Lexis 105680, *19-20 (S.D. Cal. Sept. 19, 2011) (holding "that the  does not operate to invalidate or otherwise render unenforceable" class and collective action waiver in arbitration agreement); *Goodale v. George S. May Int'l Co.,* 2011 U.S. Dist. LEXIS 37111 (E.D. Ill. April 5, 2011) (holding that arbitration should proceed on individual basis because "*Stolt-Nielson* protects a party from being compelled to arbitrate class claims where the arbitration agreement is silent with respect to such claims").

Accordingly, Defendant did ***not*** agree to arbitrate class or collective action type claims in the Agreement, and as a result, it ***cannot*** be forced to arbitrate disputes as a class or collective action.

## VI.    CONCLUSION AND REQUEST FOR RELIEF

Accordingly, Defendant requests that this Court dismiss this lawsuit and compel Plaintiff to arbitrate his claim on an individual basis in accordance with the terms of the Agreement.  In the alternative, Defendant requests that this action be stayed pending the resolution of Plaintiff's individualized claim through binding arbitration.

16

Respectfully submitted,


By:     /s/ Robert F. Friedman
        Robert F. Friedman
        Attorney in Charge
        Texas Bar No. 24007207
        Southern District No.  382
        Edward F. Berbarie
        Texas Bar No. 24045483
        Southern Dist. No. 941117
        Russell R. Zimmerer
        Texas Bar No. 24063988
        Southern Dist. No. 1132644

        **LITTLER MENDELSON, P.C.**
        2001 Ross Avenue, Suite 1500
        Dallas, Texas 75201-2931
        Tel:  (214) 880-8100
        Fax:  (214) 880-0181
        rfriedman@littler.com
        eberbarie@littler.com
        rzimmerer@littler.com

        **ATTORNEYS FOR DEFENDANT**


## CERIFICATE OF CONFERENCE OF COUNSEL

Pursuant to LR7.1, counsel for Christian Vallejo, Kevin Murray, Esquire, and counsel for Garda CL Southwest, Inc., Robert F. Friedman, Esquire, conferred with each other prior to filing of this motion; however, counsel cannot agree about the disposition of the motion.


Dated:  September 27, 2012               /s/ Robert F. Friedman
                                         Robert F. Friedman

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants identified at the time of electronic filing.

By:   */s/ Robert F. Friedman*
Robert F. Friedman

Firmwide:114138566.6 067762.1109

18