**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTIAN VALLEJO, *Individually and on behalf of all similarly situated current and former employees,* | §§§§ | |
| Plaintiff, | §§ | |
| VS. | §§ | CIVIL ACTION NO. H-12-0555 |
| GARDA CL SOUTHWEST, INC., | §§§ | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit alleging a failure to pay the overtime required under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* Christian Vallejo sued his former employer, Garda CL Southwest, Inc. ("Garda"), asserting a right to relief for himself and on behalf of other similarly situated employees. Garda moved to dismiss or stay under an arbitration clause in a collective-bargaining agreement that Vallejo signed. (Docket Entry No. 15). Garda also moved to defer any obligation to respond to discovery or to motions other than those relating to arbitration, including the plaintiff's motion for conditional certification and issuance of notice. (Docket Entry No. 17). Vallejo objected to arbitration on several grounds, including that the collective-bargaining agreement containing the arbitration clause was fraudulent or otherwise invalid. On October 18, 2012, three other Garda employees filed opt-in notices, (Docket Entries No. 19–21), and have since moved to intervene, (Docket Entry No. 32). The present record suggests that these employees did not sign a collective-bargaining agreement with an arbitration clause.

At a November 14, 2012 hearing, this court stated that under governing precedent, Vallejo's

challenges to arbitrability and to the collective-bargaining agreement had to be decided by an arbitrator. (Docket Entry No. 30). This court reserved ruling on several subsidiary issues: (1) whether all of Vallejo's claims are arbitrable, considering that most of the events giving rise to the claims happened before the effective date of the collective-bargaining agreement; (2) if all Vallejo's claims are subject to arbitration, whether to dismiss this suit or to continue it with the opt-in plaintiffs. The parties submitted additional briefing addressing these issues.[1]

Based on the pleadings, the parties' briefing, the arguments of counsel, and the relevant law, this court makes the following rulings. The motion to dismiss is granted in part and denied in part. It is granted to the extent that Vallejo is compelled to arbitrate all his claims and denied in all other respects. The motion to stay is denied as moot. Vallejo's motion for class certification is denied is moot. The motion to intervene is granted.

The reasons for these rulings are explained below.

## I.    Background

Vallejo worked as an armored-car driver and guard for Garda in Houston, Texas from July 2008 until Garda terminated his employment on January 26, 2012. As a guard, Vallejo was a member of the Houston /North Houston Drivers Association, which Garda alleges is the employees' union for Garda armored-car personnel. Vallejo was subject to a collective-bargaining agreement entered into between the union and Garda. The agreement, which Vallejo signed on October 21, 2011, stated that the union is the exclusive representative for collective-bargaining purposes. It also

---

[1] On November 14, 2012, this court invited the parties to supplement their briefing on the pending motion to dismiss or to compel arbitration, no later than December 7, 2012. (Docket Entry No. 30). Vallejo submitted a supplemental brief on December 10, 2012, docketed as a motion to supplement its response in opposition to Garda's motion to dismiss or compel arbitration. (Docket Entry No. 34). To the extent leave of court was necessary to excuse the untimeliness of the supplement, Vallejo's motion is granted.

contains an arbitration clause covering "grievances," which were defined as follows:

> a legitimate controversy, claim or dispute by any employee, shop steward or the Union concerning rates of pay, entitlement to compensation, benefits, hours, or working conditions set forth herein . . . . any claim under any federal, state or local law, statute or regulation or under any common law theory whether residing in contract, tort or equity or any other claim related to the employment relationship.

(Docket Entry No. 15, Ex. A, Collective-Bargaining Agreement, Art. 5(a)). The agreement required employees to submit grievances first to Garda and then to an arbitrator, whose decision is final and binding. The agreement also required any dispute about the "interpretation or application of this Agreement" to be arbitrated. (*Id.*) The agreement stated that it was effective as of November 1, 2011.

This agreement states that it was between Garda and the Drivers' Association, which was the union for, and the exclusive bargaining representative of, the armored car guards and drivers. It is undisputed that he signed the agreement. The signature line was below language stating that by signing, the employee had (1) read and understood the agreement, (2) signed it "freely and voluntarily," and (3) expressly "agree[d] to its terms and conditions." (*Id.*, at 16–17). Vallejo continued to work for Garda after receiving notice of the arbitration provision and signing the agreement containing it.

In this lawsuit, Vallejo claimed that he and other employees are entitled to overtime pay under the FLSA. He did not submit the claim to Garda or to arbitration. He proposed a class defined as "[a]ll individuals who were employed or are currently employed by one or more of the following: Defendant, its subsidiaries or affiliated companies as armored transport employees or in any other similarly titled position at any time during the relevant statute of limitations period." (Docket Entry No. 16, ¶ 32). In his amended complaint, Vallejo alleged, among other things, that

3

the Drivers' Association was a fraudulent or fictitious union, making the agreement fraudulent as well. Vallejo asserted state-law claims, including for fraud, fraudulent inducement, negligence, and negligent misrepresentation, based on those factual allegations.

Garda moved to dismiss or in the alternative to stay the litigation and compel arbitration. (Docket Entry No. 15). Garda argued that Vallejo's claims were expressly covered by the grievance and arbitration provisions of the collective-bargaining agreement. Garda argued that:

> [a]s a result, under both the Federal Arbitration Act and the National Labor Relations Act, this Court is required to enforce the terms of the Agreement, which requires Plaintiff to arbitrate any claims regarding his rate of pay or entitlement to compensation under federal law, or related to his employment relationship with Garda. The Agreement also assigns to arbitration all questions regarding its interpretation and application, and this Court therefore must also yield to arbitration in relation to any question that would require interpreting or applying the Agreement in the first place.

(Docket Entry No. 15, at 1–2 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009); *Rent–A–Center, W., Inc. v. Jackson*, 130 S. Ct. 2772 (2010))). Garda also argued that it could not be required to participate in class-wide arbitration because it had not expressly agreed to do so. (*Id.* at 2 (citing *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011); *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758 (2010); *Reed v. Fla. Metro. Univ.*, 681 F.3d 630 (5th Cir. 2012))). Garda argued that Vallejo's claims had to be arbitrated on an individual rather than on a collective basis. Vallejo's claim that the collective-bargaining agreement was fraudulent was, according to Garda, a challenge to the validity of the contract as a whole rather than to the arbitration clause, and therefore was an issue for the arbitrator to decide. (*Id.* at 12–13). Garda moved to stay discovery and other deadlines until this court ruled on its motion to dismiss or compel arbitration. (Docket Entry No. 17).

On October 18, 2012, Jason Winn, Karlnetta Coleman, and Artemio Caballero filed notices

of consent to join this collective action. (Docket Entries No. 19, 20, 21). Vallejo responded to Garda's motion to dismiss or to compel arbitration and moved for class certification. (Docket Entries No. 22, 23). Vallejo sought to divide the putative class into two subclasses. One would include employees like Vallejo who did sign the agreement. For this subclass, Vallejo argued, the arbitration clause would not be enforceable because the collective-bargaining agreement containing it was the product of fraud and fraudulent coercion. Vallejo also argued that even if the arbitration clause was enforceable, it would cover only those claims that arose after the collective-bargaining agreement's effective date. The second subclass would include employees like Winn, Coleman, and Caballero, whom Vallejo claimed had not signed the collective-bargaining agreement and were not otherwise bound by its grievance and arbitration provisions.

Vallejo's response in opposition to Garda's motion to stay discovery and docketing deadlines similarly argued that Winn, Coleman, Caballero, and other potential class members had not signed the collective-bargaining agreement and were not bound by its arbitration provisions. Vallejo also argued that before briefing closed and this court ruled on the motion to dismiss, discovery should be allowed into the facts relating to his claim that the union and the collective-bargaining agreement were fraudulent. Vallejo argued that such information would be essential to determining whether the arbitration clause in the agreement was binding. Vallejo contended that this court, not the arbitrator, had to make that threshold arbitrability determination. (Docket Entry No. 27).

Garda filed a reply in support of its motion to dismiss or to compel arbitration. (Docket Entry No. 25). In it, Garda emphasized Vallejo's admission that he had received a complete copy of the collective-bargaining agreement, including the arbitration clause, and then continued working for Garda. (*Id.* at 1–2 (citing Docket Entry No. 22, Ex. A, Vallejo Decl., ¶ 8))). Garda also argued

that Vallejo attacked the agreement as a whole, rather than the validity or applicability of the arbitration clause itself, and that such challenges were for the arbitrator, not this court, to decide.

On November 14, 2012, this court held a hearing on the parties' motions. (Docket Entry No. 30). Following the arguments of counsel, this court indicated that it was inclined to require Vallejo to arbitrate because, given the broad language of the arbitration clause and the fact that Vallejo challenged the entire collective-bargaining agreement as fraudulent, the arbitrator, not the court, should decide arbitrability. In that hearing, two additional issues were identified but not resolved. The first was whether all of Vallejo's claims were arbitrable, or only those that arose after the effective date of the collective-bargaining agreement. That would leave little for the arbitrator, because the agreement was signed shortly before Vallejo was fired. The second was whether the suit should be dismissed as to Winn, Coleman, and Caballero, or whether they should be allowed to intervene as named plaintiffs. This court reserved its final ruling on these issues and allowed the parties to submit additional briefing by December 7, 2012. Garda submitted a supplemental brief on December 7, (Docket Entry No. 31), and Vallejo submitted a supplemental brief on December 12, 2012, (Docket Entry No. 34).

On December 10, 2012, Winn, Coleman, and Caballero moved to intervene with a proposed complaint. (Docket Entries No. 32, 33). Garda opposed the motion, arguing that there was no intervention as of right under Federal Rule of Civil Procedure 24(a)(2), that the intervenors would suffer no prejudice in filing their own lawsuit, and that Vallejo's claims were "on the brink of dismissal" in light of the November 14 hearing. (Docket Entry No. 35, at 3 & n.3).

In its supplemental brief, Garda argued that all of Vallejo's claims are arbitrable even if the underlying events took place before the effective date of the agreement containing the arbitration

6

clause. "Plaintiff's argument is that the Agreement should not apply to certain of his claims that are based on facts that occurred prior to the date of the Agreement. This is simply a question regarding the application of the Agreement, which the parties have agreed to arbitrate, and the Court must enforce this agreement like any other." (Docket Entry No. 31, at 2). Garda also argued that the breadth of the arbitration clause requires Vallejo "to not only arbitrate claims or disputes concerning rates of pay or entitlement to compensation, but also 'any claim under any federal, state or local law,' and 'any other claim related to the employment relationship.'" (*Id.* at 3 (quoting Docket Entry No. 15, Ex. A, Art. 5(a))).

In response, Vallejo argued that his claims were arbitrable only to the extent that they arose after the effective date of the collective-bargaining agreement with the arbitration clause became effective, for the following reasons:

- substantially all of the acts giving rise to Vallejo's claims occurred before the agreement was executed or became effective, when no arbitration clause was in effect;

- the arbitration clause did not explicitly apply to prior claims;

- the arbitration clause defined a grievance as a "condition that exists as a result of a violation of the express terms of the Agreement."

- the collective-bargaining agreement provided that "the arbitrator shall not have the right to amend, take away, modify, add to, change, or disregard any of the provisions of this Agreement."

(Docket Entry No. 34, at 2).

The parties' arguments are addressed below.

**II.     The Legal Standard**

    **A.     Arbitrability**

The Federal Arbitration Act ("FAA") requires district courts to direct parties to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Federal policy strongly favors enforcing arbitration agreements. *Dean Witter Reynolds*, 470 U.S. at 217; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a party moves to compel arbitration, the FAA requires district courts to order arbitration of arbitrable claims. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.* (*In re Sedco, Inc.*), 767 F.2d 1140, 1147 (5th Cir. 1985). Arbitration agreements, like other contracts, may be invalidated by contract defenses like fraud, duress, unconscionability, or waiver. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986) ("'The right to arbitration, like any other contractual right, can be waived.'" (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (per curiam))). Because of the strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

    **B.     Intervention**

Absent a statute giving a right to intervene, Rule 24(a) imposes four requirements for intervention as of right: (1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties. "'Impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed

intervenor in a subsequent proceeding.'" *Stewart v. City of Houston*, 2009 WL 783319, at *1 (S.D. Tex. Mar. 24, 2009) (quoting *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994)).  If the disposition of a suit will not bar a proposed intervenor from asserting his or her rights in a separate action, the "impairment" prong of Rule 24(a) typically is not met.  *See Shea*, 19 F.3d at 347.

**III.     Analysis**

      **A.     Does this Court or the Arbitrator Decide Arbitrability?**

Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute it has not agreed to arbitrate.  *First Options of Chi. v. Kaplan*, 514 U.S. 938, 943 (1995). A threshold issue is what challenges to arbitrability are for the court to determine, and what challenges are for the arbitrator. This court's tentative ruling at the November 14 hearing is consistent with established precedent that the arbitrability issues Vallejo raises are for an arbitrator to decide.

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C § 2. Section 3 allows a party to request a stay of a federal action pending arbitration if a valid arbitration clause exists; § 4 allows a party to seek an order compelling arbitration under the parties' contract. The Supreme Court has issued a series of decisions addressing which so-called gateway challenges to an arbitration clause are for arbitrators to decide and which a court must first decide.  A challenge to the validity of the parties' contract as a whole, as opposed to the arbitration clause contained in the contract, is for the arbitrator to decide.  In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), the Supreme Court held that a challenge to the validity of the entire agreement as having been fraudulently induced was for the arbitrator to resolve, not the court.

Regardless of whether a contract as a whole is valid, agreements to arbitrate are severable from a larger contract and may be separately enforced and their validity separately determined. *Id.* at 406. This result was recently affirmed in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). The Court held that a challenge to an agreement containing the arbitration clause, as opposed to a challenge to the arbitration provision specifically, is for the arbitrator to decide. *Id.* at 445–46.

In *Rent–A–Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), the plaintiff challenged an arbitration agreement as unconscionable because he had been required to sign it as a condition of his employment. The contract contained a delegation clause, in which the contracting parties themselves decided whether the court or arbitrator will decide challenges to arbitrability. The delegation clause stated that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 2775. Prior case law made clear that "'[t]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?" *First Options*, 514 U.S. at 943 (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (alterations in original) (quoting *AT&T Techs.*, 475 U.S. at 649). The Court distinguished between the overall arbitration agreement (the "contract"), and the agreement to arbitrate arbitrability (the "delegation clause"). *Rent–A–Center*, 130 S. Ct. at 2778–79. The plaintiff "challenged only the validity of the contract as a whole" rather than the validity of the delegation

clause. *Id.* at 2779. The plaintiff's challenge to the arbitration agreement as unconscionable — that the plaintiff had been required to sign as a condition of his employment — had to be arbitrated because the delegation clause "clearly and unmistakably" gave the arbitrator exclusive authority over the enforceability of the agreement to arbitrate. *Id.* at 2775, 2779. In accordance with a valid delegation clause, questions of arbitrability (including the arbitrability of the overall agreement to arbitrate) must go to an arbitrator. *Id.* at 2778–79; *see also Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 493–94 (8th Cir. 2012); *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1256–57 (11th Cir. 2012).

Challenges to contract formation — including whether the plaintiff ever signed the contract or, if not, can nonetheless be bound under principles of contract law or agency, or whether the signor lacked authority to commit the alleged principal — are different from the challenges to contract validity addressed in *Buckeye* and *Rent–A–Center*. Federal substantive law governs questions of arbitrability, including in diversity cases. *Moses H. Cone*, 460 U.S. at 24. State-law contract principles govern questions of contract formation. *First Options*, 514 U.S. at 944; *see also* 9 U.S.C. § 2 (providing that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Challenges to the existence — as opposed to the enforceability or validity or scope — of an agreement to arbitrate, are for a court to decide. *E.g.*, *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011) ("[It] is for the courts and not the arbitrator to decide in the first instance[ ] a dispute over whether the parties entered into any arbitration agreement in the first place."); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 212 (5th Cir. 2003) ("We vacate the order compelling arbitration and remand the case to the district court, concluding that where the very existence of any agreement to

11

arbitrate is at issue, it is for the courts to decide based on state-law contract formation principles."). The Supreme Court did not address that aspect of the which-tribunal-decides-arbitrability issue in *Buckeye* or *Rent-A Center*.

The Court did address that issue in *Granite Rock Co. v. International Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010). The central dispute was whether a collective-bargaining agreement had been ratified on a specific date. If the ratification occurred on one date, a no-strike provision applied. The gateway issue was whether the dispute over the ratification date would be decided in arbitration or litigation. The collective-bargaining agreement had a broad arbitration clause, but no specific delegation clause. The Court held that the contract-formation issue was for the courts, emphasizing that when a dispute concerns contract formation, it "is generally for courts to decide." *Id.* at 2855–56. Because it was the court, rather than the arbitrator, that had to decide whether an agreement to arbitrate existed, the date of contract formation was for the court to decide, at least in the absence of a delegation clause to the contrary. *Id.* at 2859–60. The Court did not analyze in detail whether the result would have been different had the agreement delegated contract-formation issues to the arbitrator. "[A]bsent a valid provision specifically committing such disputes to an arbitrator," the contract-formation issue was for the court to decide. *Id.* at 2858.

Several lower court decisions applying *Rent–A–Center* and *Granite Rock* are instructive. In *Allen v. Regions Bank*, 389 F. App'x 441 (5th Cir. 2010) (per curiam), the court addressed an arbitration provision in a home equity loan contract. The arbitration agreement contained a delegation provision stating, "[A] dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire Agreement, shall be decided by the

12

arbitrator(s)." *Id.* at 443.  The court of appeals found that the provision "clearly and unmistakably" called for the arbitrator to decide arbitrability issues.  *Id.* at 446; *see also Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 675 ("[The] arbitration agreement . . . . state[s] that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'  We agree with most of our sister circuits that [this] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72 (2d Cir. 2012) ("[W]hether the district court properly declined to determine independently whether the [lawsuit] involved 'approved investments' [under the arbitration agreement] does not turn on whether that question was one of scope or formation.  It turns on whether there was clear and unmistakable evidence of the parties' intent to commit that question to arbitration.  For in the absence of such clear and unmistakable evidence, questions of arbitrability are presumptively resolved by the court, regardless of whether they are related to scope or formation. . . . The district court should not have refused to determine independently whether the [lawsuit] involved 'approved investments' without first finding clear and unmistakable evidence of the parties' intent to submit that question to arbitration." (citing *Granite Rock*, 130 S. Ct. at 2858–59)).

In *Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2012), the court addressed a dispute arising under an agreement between a recent immigrant and a financial services company.  The agreement had a broad arbitration clause.  The plaintiff sued, alleging breach of fiduciary duty and fraud, and the defendant sought to enforce the arbitration provision.  The district court concluded that contract formation was an issue because of the plaintiff's limited English, and that

the district court had to decide this issue before it could decide whether to compel arbitration. *Id.* at 737. The appellate court "agree[d] with the district court that the existence of a contract is an issue that the courts must decide prior to staying an action and ordering arbitration, unless the parties have committed even that gateway issue to the arbitrators." *Id.* at 738. The appellate court, however, found a written agreement to arbitrate sufficiently evidenced by the plaintiff's signature. "[T]he parties formed a contract and their agreement included an arbitration clause." *Id.* The appellate court reversed the district court because the record contained enough evidence to resolve the threshold question on arbitrability. *Id.*

In the present suit, to the extent Vallejo challenges the validity of the collective-bargaining agreement, it is a challenge to the validity of the entire agreement, not to the arbitration provision. That invalidity challenge is for an arbitrator to decide under *Prima Paint* and the many similar cases. Unlike in *Granite Rock* and similar cases, Vallejo does not challenge that he signed the arbitration provision or that he continued working after he did so.

In addition, Texas law — which would apply to formation issues — recognizes that an employee who has received notice of an arbitration policy accepts it by continuing to work with knowledge of the provisions. *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (1986)). "'To prove notice, an employer asserting modification must prove that he unequivocally notified the employee of definite changes in employment terms.'" *Id.* (quotation omitted). "[W]hen an employer notifies an employee of changes to the at-will employment contract and the employee 'continues working with knowledge of the changes, he has accepted the changes as a matter of law.'" *Id.* (quotation omitted); *see also In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (per curiam) (holding that the

14

absence of a signed agreement is not an obstacle to enforcement of the arbitration agreement); *Munoz v. Luby's Inc.*, 2011 WL 6291966, at *4–6 (S.D. Tex. Dec. 14, 2011). It is undisputed that the collective-bargaining agreement's arbitration provision was in writing. It is also undisputed that Vallejo continued to work after having signed the collective-bargaining agreement and having notice of its arbitration provision. No facts in this case could support a claim that the parties failed to form an arbitration agreement.

Given the record and the governing precedent, Vallejo's challenges to arbitrability are arbitrable.

### B. Are Vallejo's Claims Arising from Events Before the Agreement Covered by the Arbitration Clause?

The parties dispute whether claims that arose from events occurring before the effective date of the collective-bargaining agreement are subject to its arbitration clause. "The language of the arbitration agreement at issue determines whether a particular dispute is within its scope." *Douglas v. Timex Corp.*, 1998 WL 34072739, at *4 (S.D. Tex. Dec. 30, 1998) (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998)). The arbitration clause provides that the parties will arbitrate any unresolved dispute over a "grievance." (Docket Entry No. 15, Ex. A, Art. 5(b)–(c)). A "grievance" is "a condition that exists as a result of a violation of the express terms of the [Collective Bargaining] Agreement"; a "claim or dispute" by an employee concerning working conditions, hours, pay, or benefits; "the interpretation or application" of the Agreement; or "any claim under" law or "any other claim related to the employment relationship." (*Id.*, Art. 5(a)).

Courts considering similar clauses have found that they cover claims that arose before the effective date of the arbitration agreement and make those claims arbitrable. *See, e.g.*, *Douglas*,

1998 WL 34072739, at *4 ("The Belmont Plan does not limit arbitration to only those events which arose after its effective date. Instead, it applies to 'any legal or equitable claim.' From the plain language of the Plan, it is clear that any claims which arose before its effective date are subject to arbitration." (citation omitted)); *see also R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 539 (5th Cir. 1992) (allowing arbitration of preexisting claims when the arbitration clause covered "all . . . relations and dealings" with the defendant), *abrogation on other grounds recognized by Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 381 (5th Cir. 2004); *Melendez v. Hoque & Mumith, Inc.*, 2012 WL 2595268, at *3 (N.D. Tex. July 3, 2012) ("The Agreement . . . deals with the compensation Melendez is entitled to while employed by Defendant as a limousine driver, regardless of his employment commencement date or the date he signed the Agreement, and the arbitration agreement encompasses all claims and controversies arising from or related to matters covered by the Agreement, including compensation issues."); *Boice v. A.G. Edwards & Sons, Inc.*, 1988 WL 97966, at *2 (E.D. La. Sept. 9, 1988) (ordering arbitration because an arbitration clause governing "[a]ny controversy . . . arising out of this agreement . . . or any other cause whatsoever" was "not limited to future controversies").

One case reaches a different result. In *Moran v. Ceiling Fans Direct, Inc.*, 2006 WL 2478837, at *5 (S.D. Tex. Aug. 25, 2006), the court held that FLSA claims that arose before the effective date of the arbitration agreement were not arbitrable because they were not "disputes 'arising out of' the employment relationship." The *Moran* court decided that the "arising out of" language in the arbitration agreement covered only those employment-related claims that had yet to "'com[e] into being'" when the agreement became effective. *Id.* (quoting *In re Brookshire Brothers, Ltd.*, 198 S.W.3d 381, 386 (Tex. App.—Texarkana, 2006, orig. proceeding)). *Moran* is

16

distinguishable because the arbitration clause in the collective-bargaining agreement here is much broader. The arbitration clause does not define arbitrable grievances or disputes only as those "arising out of" the collective-bargaining agreement or the employment relationship. *Cf. id.* Rather, the clause covers claims "that exist[]" because of a breach of the Agreement; any "claim or dispute" about wages; and "any other claim related to the employment relationship." (Docket Entry No. 15, Ex. A, Art. 5(a)). The language in this case is more similar to the broad language in the cases in which courts ordered arbitration of disputes that arose before the effective date of an arbitration clause. *See, e.g.*, *Douglas*, 1998 WL 34072739, at *4; *Boice*, 1988 WL 97966, at *2.

Vallejo cites an Alabama case for the proposition that an arbitration clause is prospective unless it contains explicit language making it retrospective. (Docket Entry No. 34, at 3 ("[T]he arbitration clause in the fraudulent Labor Agreement *does not* specifically include prior claims." (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton*, 719 So. 2d 201, 203 (Ala. 1998)))). *Merrill Lynch* held that an arbitration provision will cover disputes arising under prior contracts where the clause contains retroactive, time-specific language mandating its application to previously executed contracts. 719 So. 2d at 203. To rule that an arbitration provision is prospective-only *unless* it includes such language is inconsistent with the approach taken in the federal courts.

Vallejo also argues that the lack of an explicit retroactivity provision makes the arbitration clause ambiguous. Vallejo is correct that the arbitration clause does not define "grievance" in retrospective terms. *Cf. Rent–A–Center*, 130 S. Ct. 2772, 2777 ("'Claims Covered By The Agreement' provides for arbitration of all 'past, present or future' disputes arising out of Jackson's employment with Rent–A–Center."). The clause here defines a grievance as "a condition that exists as a result of a violation of the express terms of the Agreement," (Docket Entry No. 15, Ex. A, Art.

17

5(a)–(c)), and the agreement was not effective until November 2011. But the arbitration clause also broadly defines an arbitrable claim as a "claim or dispute" by an employee concerning . . . pay," "any claim under" a law, such as the FLSA, or "any other claim related to the employment relationship." (*Id.*, Art. 5(a)). These are disputes that could arise before the effective date of the agreement. Given the broad language of the arbitration clause in the agreement Vallejo signed, and the federal cases set out above, Vallejo's claims are arbitrable even though the agreement with the arbitration clause became effective close to the end of his employment.

### C. The Motion to Intervene

Garda argues that the intervenors' motion to intervene should be denied because they are not entitled to intervene as of right. *See* FED. R. CIV. P. 24(a)(2). According to Garda, the intervenors cannot show they will suffer irreparable harm if they are not allowed to intervene. But the intervenors satisfy the requirements for permissive intervention under Rule 24(b)(1)(B), which gives this court discretion to allow intervention as to anyone with "a claim or defense that shares with the main action a common question of law or fact." "That Rule gives district courts discretion to allow intervention when '(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.'" *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313 (S.D. Tex. 2012) (quoting *League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989)). It is clearly more efficient for both the parties and the court to allow Winn, Coleman, and Caballero to intervene in this suit rather than require them to file anew. Their application was timely; the claims and the lawsuit have common questions, and neither undue delay nor prejudice will result.

The motion to intervene is granted. In light of this ruling, the motion to stay discovery and Vallejo's motion for class certification are moot. The class certification denial is without prejudice to reassertion when and as appropriate.

## IV. Conclusion

The motion to dismiss or to stay proceedings and compel arbitration is granted in part and denied in part. The motions to stay discovery and deadlines and to certify a class are denied as moot. The motion to intervene is granted. The motion to file a supplemental response in opposition to the motion to dismiss is granted. A status conference is set for **February 15, 2013**, at 8:30 a.m. in Courtroom 11-B.

SIGNED on January 30, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge