IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHRISTIAN VALLEJO, *Individually and on behalf of all similarly situated current and former employees,* § § § § | |
| Plaintiff, § § | |
| VS. § | CIVIL ACTION NO. H-12-0555 |
| § | |
| GARDA CL SOUTHWEST, INC., § § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

This is a suit alleging a failure to pay the overtime required under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.* Christian Vallejo sued his former employer, Garda CL Southwest, Inc. (Garda), asserting a right to relief for himself and on behalf of other similarly situated employees. Garda moved to dismiss or stay and compel arbitration under an arbitration clause contained in a collective-bargaining agreement that Vallejo signed. (Docket Entry No. 15). On October 18, 2012, three other Garda employees — Artemio Caballero, Karlnetta Coleman, and Jason Winn — filed opt-in notices and then moved to intervene in the FLSA case against Garda. (Docket Entries No. 19–21, 32).

On January 30, 2013, this court granted the motion to dismiss in part and denied it in part. The motion was granted to the extent that Vallejo was compelled to arbitrate his own claims, which were dismissed. (Docket Entry No. 36). The motion to intervene was granted. On March 8, 2013, Garda moved to dismiss or stay the proceedings and compel arbitration as to the three intervenors, who filed a response, to which Garda replied. (Docket Entry No. 39, 43, 44). Based on the

pleadings, the motion and response, and the relevant law, this court denies the motion to dismiss or to stay and compel arbitration as to the intervenors' claims. The reasons for this ruling are explained below.

I.      Background

     A.      The Plaintiffs

          1.      Christian Vallejo

Although this court has ruled that Christian Vallejo must arbitrate his claims against Garda, his claims are helpful to understanding the present motion seeking to require the intervenors to arbitrate. Christian Vallejo worked as an armored-car driver and guard for Garda in Houston, Texas from July 2008 until Garda terminated his employment on January 26, 2012. Vallejo was a member of the Houston /North Houston Drivers Association, which Garda alleges is the employees' union for Garda armored-car personnel. Vallejo was subject to a collective-bargaining agreement between the union and Garda. The agreement, which Vallejo signed on October 21, 2011, stated that the union is the exclusive representative for collective-bargaining purposes. The agreement contained an arbitration clause covering "grievances," which were defined as follows:

> a legitimate controversy, claim or dispute by any employee, shop steward or the Union concerning rates of pay, entitlement to compensation, benefits, hours, or working conditions set forth herein . . . . any claim under any federal, state or local law, statute or regulation or under any common law theory whether residing in contract, tort or equity or any other claim related to the employment relationship.

(Docket Entry No. 15, Ex. A, Collective-Bargaining Agreement, Art. 5(a)). The agreement required employees to submit grievances first to Garda and then to an arbitrator, whose decision would be final and binding. The agreement also required any dispute about the "interpretation or application of this Agreement" to be arbitrated. (*Id.*) The agreement had an effective date of November 1,

2011.

The agreement stated that it was between Garda and the drivers' association, identified as the union for, and the exclusive bargaining representative of, the armored car guards and drivers. It is undisputed that Vallejo signed the agreement. The signature line was below language stating that by signing, the employee had (1) read and understood the agreement, (2) signed it "freely and voluntarily," and (3) expressly "agree[d] to its terms and conditions." (*Id.*, at 16–17). Vallejo continued to work for Garda after receiving notice of the agreement with the arbitration provision and signing it.

### 2. The Intervenors

Jason Winn was employed by Garda as a driver, messenger, and guard at Garda's Houston facility until his employment was terminated on September 14, 2010. Karlnetta Coleman was employed by Garda from January 17, 2011 to January 31, 2012, when Garda terminated her employment. She was employed as a driver, messenger, and guard at Garda's Houston, Texas facility. Artemio Caballero began working for Garda on June 7, 2010 as a driver and messenger at its Houston facility. (Docket Entry No. 33).

According to Garda, the intervenors were all members of the drivers' association during the time they worked for Garda. (Docket Entry No. 39, at 5). But Garda has not produced collective-bargaining agreements signed by the intervenors. Instead, Garda explains that all drivers who worked during the same period were automatically members of the union and subject to the terms of the collective-bargaining agreement. According to Garda, "[a]n Agreement setting forth terms and conditions of employment for the drivers/messengers/guards and Garda (as well as its predecessors) has been negotiated and in effect since at least 2006. (*Id.* (citing Docket Entry No.

3

40, App. at 5, Decl. of Winton Blackmon, ¶ 5)). "These Agreements are negotiated and bargained for by an exclusive bargaining representative (the Houston/North Houston Drivers Association) on all drivers/messengers/guards' behalf." (*Id.*)

The intervenors asserted that they never agreed to be part of the drivers' association or any union while at Garda. They deny signing a collective-bargaining agreement that contained an arbitration provision. Each intervenor submitted an affidavit supporting these assertions. (Docket Entry No. 43, Exs. A–D). The intervenors also point out that while Vallejo's signature is among the signatures on the Labor Agreement Garda produced, their signatures are not. In addition, Winn's employment terminated before the 2011 Labor Agreement's effective date. Finally, the intervenors argue that there is no evidence that they knew about the Labor Agreement during the time they worked for Garda. (Docket Entry No. 43, ¶ 6).

### B.    This Lawsuit

Vallejo claimed that he and other employees were entitled to overtime pay for their work at Garda. Vallejo proposed a class defined as "[a]ll individuals who were employed or are currently employed by one or more of the following: Defendant, its subsidiaries or affiliated companies as armored transport employees or in any other similarly titled position at any time during the relevant statute of limitations period." (Docket Entry No. 16, ¶ 32). In his amended complaint, Vallejo alleged, among other things, that the drivers' association was a fraudulent or fictitious union, making the Labor Agreement containing the arbitration clause fraudulent as well. Vallejo asserted state-law claims, including for fraud, fraudulent inducement, negligence, and negligent misrepresentation, based on those factual allegations.

Garda moved to dismiss or in the alternative to stay the litigation and compel arbitration.

4

(Docket Entry No. 15). Garda argued that Vallejo's claims were expressly covered by the grievance and arbitration provisions of the collective-bargaining agreement. Vallejo's claim that the collective-bargaining agreement was fraudulent was, according to Garda, a challenge to the validity of the contract as a whole rather than to the arbitration clause, and therefore was an issue for the arbitrator to decide. (*Id.* at 12–13).

On October 18, 2012, Winn, Coleman, and Caballero filed notices of consent to join this collective action. (Docket Entries No. 19, 20, 21). Vallejo responded to Garda's motion to dismiss or to compel arbitration and moved for class certification. (Docket Entries No. 22, 23). Vallejo sought to divide the putative class into two subclasses. One would include employees like Vallejo who did sign the agreement. For this subclass, Vallejo argued, the arbitration clause would not be enforceable because the collective-bargaining agreement containing it was the product of fraud and fraudulent coercion. Vallejo also argued that even if the arbitration clause was enforceable, it would cover only those claims that arose after the collective-bargaining agreement's effective date. The second subclass would include employees like Winn, Coleman, and Caballero, whom Vallejo claimed had not signed the collective-bargaining agreement and were not otherwise bound by its grievance and arbitration provisions.

On November 14, 2012, this court held a hearing on the parties' motions. (Docket Entry No. 30). On December 10, 2012, Winn, Coleman, and Caballero moved to intervene with a proposed complaint. (Docket Entries No. 32, 33). On January 30, 2013, this court dismissed Vallejo's claims on the basis of the arbitration clause and granted Winn, Coleman, and Caballero leave to intervene. (Docket Entry No. 36). Garda moved to dismiss or to stay and compel arbitration as to the claims of Winn, Coleman, and Caballero. (Docket Entry No. 39). As with Vallejo, Garda argued that the

5

Labor Agreement's arbitration clause mandated arbitration of the intervenors' claims. Garda also argued that arguments about the union's validity did not affect the validity of the arbitration clause and were for an arbitrator to decide. In response, the intervenors argued that Garda had not presented evidence that they assented to the arbitration clause in the Labor Agreement and repeated Vallejo's argument that the union itself was fictitious and fraudulent. (Docket Entry No. 43). Garda replied that the legal status of the union was irrelevant to whether the Labor Agreement's arbitration clause applied to employees such as Winn, Coleman, and Caballero. (Docket Entry No. 44).

These arguments and their responses are discussed below.

**II.     The Legal Standard**

The Federal Arbitration Act ("FAA") requires district courts to direct parties to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Federal policy strongly favors enforcing arbitration agreements. *Dean Witter Reynolds*, 470 U.S. at 217; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a party moves to compel arbitration, the FAA requires district courts to order arbitration of arbitrable claims. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.* (*In re Sedco, Inc.*), 767 F.2d 1140, 1147 (5th Cir. 1985). The first task of a court asked to compel arbitration is to determine whether the parties entered into a binding agreement to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985); *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). Making this determination requires the court to consider two issues: (1) validity — i.e., "whether there is a valid agreement to arbitrate between the parties" — and (2) scope — i.e., "whether the dispute in question falls within the scope of that arbitration agreement." *Conegie*, 492 F.3d at 598.

Because arbitration agreements are matters of contract, the validity and scope of such an agreement are governed by state contract law. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). If the parties have entered into a binding agreement to arbitrate the dispute, the court must determine whether any federal statute or policy renders the claims nonarbitrable. *Conegie*, 492 F.3d at 598. Arbitration agreements, like other contracts, may be invalidated by contract defenses like fraud, duress, unconscionability, or waiver. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986) ("'The right to arbitration, like any other contractual right, can be waived.'" (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (per curiam))); *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (same). Because of the strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004); *see also Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam) (noting the strong presumption in favor of arbitration).

**III.  Analysis**

Arbitration is a matter of contract. Generally, a party cannot be required to arbitrate absent an agreement to do so. *First Options of Chi. v. Kaplan*, 514 U.S. 938, 943 (1995). A threshold issue is what challenges to arbitrability are for the court to determine, and what challenges are for the arbitrator. As with Vallejo, the intervenors' arguments against arbitration rest largely on arguments that the drivers' association was a fraudulent union and that any arbitration agreement that association purported to make could not bind the intervenors. As this court's previous order made clear, the intervenors' arguments about the union's overall validity are separate from the arguments

7

about whether the parties agreed to arbitrate.

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. Section 3 allows a party to request a stay of a federal action pending arbitration if a valid arbitration clause exists; § 4 allows a party to seek an order compelling arbitration under the parties' contract. The Supreme Court has issued a series of decisions addressing which so-called gateway challenges to an arbitration clause are for arbitrators to decide and which a court must first decide. A challenge to the validity of the parties' contract as a whole, as opposed to the arbitration clause contained in the contract, is for the arbitrator to decide. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), the Supreme Court held that a challenge to the validity of the entire agreement as having been fraudulently induced was for the arbitrator to resolve, not the court. Regardless of whether a contract as a whole is valid, agreements to arbitrate are severable from a larger contract and may be separately enforced and their validity separately determined. *Id.* at 406. This result was recently affirmed in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). The Court held that a challenge to an agreement containing the arbitration clause, as opposed to a challenge to the arbitration provision specifically, is for the arbitrator to decide. *Id.* at 445–46.

In *Rent–A–Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), the plaintiff challenged an arbitration agreement as unconscionable because he had been required to sign it as a condition of his employment. The contract contained a delegation clause, in which the contracting parties themselves decided whether the court or arbitrator will decide challenges to arbitrability. The delegation clause stated that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability,

8

enforceability or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 2775. Prior case law made clear that "'[t]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?" *First Options*, 514 U.S. at 943 (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944 (alterations in original) (quoting *AT&T Techs.*, 475 U.S. at 649). The *Rent–A–Center* Court distinguished between the overall arbitration agreement (the "contract"), and the agreement to arbitrate arbitrability (the "delegation clause"). 130 S. Ct. at 2778–79. The plaintiff "challenged only the validity of the contract as a whole" rather than the validity of the delegation clause. *Id.* at 2779. The plaintiff's challenge to the arbitration agreement as unconscionable — that the plaintiff had been required to sign as a condition of his employment — had to be arbitrated because the delegation clause "clearly and unmistakably" gave the arbitrator exclusive authority over the enforceability of the agreement to arbitrate. *Id.* at 2775, 2779. In accordance with a valid delegation clause, questions of arbitrability (including the arbitrability of the overall agreement to arbitrate) must go to an arbitrator. *Id.* at 2778–79; *see also Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 493–94 (8th Cir. 2012); *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1256–57 (11th Cir. 2012).

Challenges to contract formation — including whether the plaintiff signed the contract or, if not, can nonetheless be bound under principles of contract or agency law, or whether the signor lacked authority to commit the alleged principal — are different from the challenges to contract

9

validity addressed in *Buckeye* and *Rent–A–Center*. Federal substantive law governs questions of arbitrability, including in diversity cases. *Moses H. Cone*, 460 U.S. at 24. State-law contract principles govern questions of contract formation. *First Options*, 514 U.S. at 944; *see also* 9 U.S.C. § 2 (providing that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Challenges to the existence — as opposed to the enforceability or validity or scope — of an agreement to arbitrate, are for a court to decide. *E.g.*, *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011) ("[It] is for the courts and not the arbitrator to decide in the first instance[ ] a dispute over whether the parties entered into any arbitration agreement in the first place."); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 212 (5th Cir. 2003) ("We vacate the order compelling arbitration and remand the case to the district court, concluding that where the very existence of any agreement to arbitrate is at issue, it is for the courts to decide based on state-law contract formation principles."). The Supreme Court did not address that aspect of the which-tribunal-decides-arbitrability issue in *Buckeye* or *Rent-A Center*.

The Court did address that issue in *Granite Rock Co. v. International Brotherhood of Teamsters*, 130 S. Ct. 2847 (2010). The central dispute was whether a collective-bargaining agreement had been ratified on a specific date. If the ratification occurred on one date, a no-strike provision applied. The gateway issue was whether the dispute over the ratification date would be decided in arbitration or litigation. The collective-bargaining agreement had a broad arbitration clause, but no specific delegation clause. The Court held that the contract-formation issue was for the courts, emphasizing that when a dispute concerns contract formation, it "is generally for courts to decide." *Id.* at 2855–56. Because the court, rather than the arbitrator, had to decide whether an

10

agreement to arbitrate existed, the date of contract formation was for the court to decide, at least in the absence of a delegation clause to the contrary. *Id.* at 2859–60. The Court did not analyze in detail whether the result would have been different had the agreement delegated contract-formation issues to the arbitrator. "[A]bsent a valid provision specifically committing such disputes to an arbitrator," the contract-formation issue was for the court to decide. *Id.* at 2858.

Several lower court decisions applying *Rent–A–Center* and *Granite Rock* are instructive. In *Allen v. Regions Bank*, 389 F. App'x 441 (5th Cir. 2010) (per curiam), the court addressed an arbitration provision in a home equity loan contract. The arbitration agreement contained a delegation provision stating, "[A] dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire Agreement, shall be decided by the arbitrator(s)." *Id.* at 443. The court of appeals found that the provision "clearly and unmistakably" called for the arbitrator to decide arbitrability issues. *Id.* at 446; *see also Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("[The] arbitration agreement . . . . state[s] that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.' We agree with most of our sister circuits that [this] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 72 (2d Cir. 2012) ("[W]hether the district court properly declined to determine independently whether the [lawsuit] involved 'approved investments' [under the arbitration agreement] does not turn on whether that question was one of scope or formation. It turns on whether there was clear and unmistakable evidence of the parties' intent to commit that

11

question to arbitration. For in the absence of such clear and unmistakable evidence, questions of arbitrability are presumptively resolved by the court, regardless of whether they are related to scope or formation. . . . The district court should not have refused to determine independently whether the [lawsuit] involved 'approved investments' without first finding clear and unmistakable evidence of the parties' intent to submit that question to arbitration." (citing *Granite Rock*, 130 S. Ct. at 2858–59)).

In *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), the court found that the arbitration agreement did not contain "clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability." *Id.* at 1127. The plaintiffs agreed to arbitrate arbitrability in disputes with Toyota dealerships, but the dealerships were not parties to the suit and Toyota was not a signatory to the arbitration agreements. *Id.* "Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable." *Id.*

In *Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2012), the court addressed a dispute arising under an agreement between a recent immigrant and a financial services company. The agreement had a broad arbitration clause. The plaintiff sued, alleging breach of fiduciary duty and fraud, and the defendant sought to enforce the arbitration provision. The district court concluded that contract formation was an issue because of the plaintiff's limited English, and that the district court had to decide this issue before it could decide whether to compel arbitration. *Id.* at 737. The appellate court "agree[d] with the district court that the existence of a contract is an issue that the courts must decide prior to staying an action and ordering arbitration, unless the parties have committed even that gateway issue to the arbitrators." *Id.* at 738. The appellate court,

however, found a written agreement to arbitrate sufficiently evidenced by the plaintiff's signature. "[T]he parties formed a contract and their agreement included an arbitration clause." *Id.* The appellate court reversed the district court because the record contained enough evidence to resolve the threshold question on arbitrability. *Id.*

In the present suit, the intervenors challenge not only the validity of the collective-bargaining agreement, but also whether they assented to the arbitration provision. If there is an enforceable arbitration provision, the invalidity challenge is for an arbitrator to decide under *Prima Paint* and similar cases. But under *Granite Rock* and similar cases, the intervenors' arguments that they never signed the agreement containing the arbitration provision or otherwise assented to it at all raise threshold issues of arbitrability that this court must first decide.

In contrast to the evidence as to Vallejo, the present record does not show that the intervenors signed the Labor Agreement. Texas law — which applies to the contract-formation issues — recognizes that an employee who has received notice of an arbitration policy accepts it by continuing to work with knowledge of the provisions. *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (1986)). "'To prove notice, an employer asserting modification must prove that he unequivocally notified the employee of definite changes in employment terms.'" *Id.* (quotation omitted). "[W]hen an employer notifies an employee of changes to the at-will employment contract and the employee 'continues working with knowledge of the changes, he has accepted the changes as a matter of law.'" *Id.* (quotation omitted); *see also In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (per curiam) (holding that the absence of a signed agreement is not an obstacle to enforcement of the arbitration agreement); *Munoz v. Luby's Inc.*, 2011 WL 6291966, at *4–6 (S.D. Tex. Dec. 14, 2011). Garda

relies on evidence that a Labor Agreement that covered the intervenors was in place during their employment. But Garda has not pointed to evidence that the intervenors had notice of the Labor Agreement and the arbitration clause it contained and continued to work after receiving that notice. To the contrary, the intervenors have stated that they did not know about the Labor Agreement and did not assent to membership in the drivers' association.

Based on the present record, this court cannot conclude that the intervenors consented to arbitration or are otherwise bound by the arbitration clause. *See, e.g.*, *Moran v. Ceiling Fans Direct, Inc.*, 2006 WL 2478837, at \*5 (S.D. Tex. Aug. 25, 2006) ("CFD [Ceiling Fans Direct] failed to give its employees unequivocal notice that it was implementing an arbitration policy and that an employee agreed to be bound by the arbitration policy if he continued to work for CFD. The employees, on the other hand, . . . . stated verbally that they did not agree to the terms of the arbitration policy and did not sign and return the acknowledgment page of the arbitration policy in the Handbook. Absent proof of adequate notice and acceptance, Defendant and Plaintiffs did not have an enforceable arbitration agreement."). Garda's motion to dismiss or to stay and compel arbitration as to the intervenors must be denied.

## IV. Conclusion

The motion to dismiss or to stay proceedings and compel arbitration as to the intervenors is denied. A status conference is set for **June 21, 2013**, at 9:00 a.m. in Courtroom 11-B.

SIGNED on June 4, 2013, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge